BILL R. GARVER, Petitioner-Appellant, *v.* ROY D. FERGUSON *et al.*, d/b/a Ferguson-Cobbel Construction, Respondents-Appellees.

Fifth District   No. 77-362

Opinion filed July 24, 1978.

JONES, J., dissenting.

Hoagland, Maucker, Bernard & Almeter, of Alton (James K. Almeter, of counsel), for appellant.

Cox and Bassett, P. C., of Wood River (William M. Cox, Jr., of counsel), for appellees.

Mr. JUSTICE WINELAND delivered the opinion of the court:

Appellant, Bill R. Garver, appeals from an order of the Circuit Court of Madison County confirming an arbitrator's award of $26,400 in favor of the appellees, Roy D. Ferguson and R. Gene Cobbel, d/b/a Ferguson-Cobbel Construction.

Appellant, as owner-architect, entered into a construction contract for a single-family vacation home on Holiday Shores, Madison County, Illinois. Almost immediately disputes arose between appellant and appellees over whether appellees were constructing the house in accordance with the plans and specifications of the construction contract. Said contract also provided "that all Work will be of good quality, free from faults and defects and in conformance with the Contract Documents. All Work not so conforming to these standards may be considered defective." The disputes were primarily between Garver and Cobbel as Ferguson was seldom at the construction site.

The first dispute between the parties arose over the manner in which the concrete was poured. Appellant wanted a monolithic pour of the walls. Cobbel admitted the pour was a "piecemeal pour," but that said pour was necessitated by adverse weather conditions. One wall developed a slope face, because some of the forms slipped when the concrete was poured. Cobbel replaced the wall. Subsequently leakage occurred in the basement, and one basement wall had started to crack. Cobbel stated that he would plug the hole in the wall but did not do it as the contract was terminated. Garver maintained that the holes were where appellees thought that the utility lines would go through; however, the utility lines did not go through those holes. Cobbel, on the other hand, testified that Garver showed him where the holes were to be made. A dispute as to the type of waterproofing used on the walls arose. Cobbel admitted that the type of waterproofing applied was not the type specified in the construction contract. Architects, engineers, and contractors filed affidavits in support of Garver. After the contract was terminated, Bode Construction Company completed the project. Frank Bode's affidavit stated that he had to rewaterproof certain portions of the basement.

The second disagreement arose over the disposition of excess materials. The contract specified that excess materials were to be the property of the owner. Cobbel interpreted the contract to mean that only materials which could not be used on other construction projects became property of the owner. Other excess materials became the property of the appellees. The affidavits stated that if the contract specifically provided that excess

materials belonged to the owner, the accepted interpretation of that provision is that all of the excess material belonged to the owner.

The third area of dispute involved the roof of the house. Garver stated that the roof sheeting did not meet contract specifications. Cobbel first stated that he could not procure roof sheeting which met the specifications of the contract. Later Cobbel stated that he thought the roof sheeting met the specifications of the contract. The contract further provided that the roof flashing was to be factory coated brown or bronze and to be of the same material as the gutters. The flashing, which was installed by the appellees, was .013 thickness. The affidavits stated that the flashing was not thick enough and was of little value to prevent water from intruding on the interior of the home.

Section 14.2.1 of the contract provided that if the contractor is guilty of a substantial violation of a provision of the contract documents, this, after giving seven days written notice, terminated the employment of the contractor. When appellees proceeded to install shingles over the defective flashing, Garver ordered them to stop work pursuant to another section of the contract. The contract between the parties was subsequently terminated.

In addition to the main areas of disputes noted above, the affidavits of the contractors, engineers, and architects, who inspected the home after the contract was terminated, stated that the overall quality of workmanship was poor. The framing methods did not provide a structural continuity which developed the full strength capacity of the component parts, much less the structural system as a whole. The floor-to-floor dimension was off approximately one inch which necessitated a reworking of the circular stairs. The north wall leaned too far into the brick work and had to be pulled back. The balcony deck was not attached to the house with galvanized bolts as specified but attached with nails which produced rust streaks after a rain. The bathtub was not installed according to the manufacturer's specifications. The bathtub and shower area was not properly insulated. The sliding door sill flashing discharges its water into the wall construction which will cause rot in the interior wall.

When Garver terminated the contract, he and affiant Rapp estimated that the project was approximately 30% to 40% complete. Appellees estimated that their work was 70% complete. Garver attempted to obtain bids for completion of the home, but he was unable to obtain any bids as various contractors would not estimate the amount of time and materials they would need to correct the defective workmanship of appellees. Bode Construction completed the house on a time and material basis and billed Garver $47,040.56.

Pursuant to the construction contract, appellees submitted their claim

for $45,000 against the appellant to arbitration. Appellant counterclaimed for $18,211.30. By stipulation of the parties, the matter proceeded to arbitration by a two-person panel. Said arbitrators were Jack Bland and Angelo Corrubia, neither of whom had previously served as an arbitrator.

■■ Illinois has enacted the Uniform Arbitration Act (Ill. Rev. Stat. 1975, ch. 10, par. 101 *et seq.*). Section 12 of the Act (Ill. Rev. Stat. 1975, ch. 10, par. 112) limits the basis on which an arbitration award may be vacated. Appellant argues that the award should be vacated on the grounds that the arbitrators exceeded their powers under the contract and that arbitrator Corrubia was prejudiced against appellant, although Corrubia was selected as a neutral arbitrator. We need only discuss the first issue.

The contract between the parties provided:

> "If the Contractor * * * is guilty of a substantial violation of a provision of the Contract Documents, then the Owner, upon certification by the Architect that sufficient cause exists to justify such action, may, without prejudice to any right or remedy and after giving the Contractor and his surety, if any, seven days written notice, terminate the employment of the Contractor and take possession of the site and of all materials, equipment, tools, construction equipment and machinery thereon owned by the Contractor and may finish the work by whatever method he may deem expedient."

A final disposition of differences between parties in an easier, more expeditious, and less expensive manner than by litigation is the object of arbitration; therefore, whenever possible the court construes awards so as to uphold their validity. (*Sweet v. Steve's Cartage Co.* (3d Dist. 1977), 51 Ill. App. 3d 913, 365 N.E.2d 1110.) However, an arbitrator must not exceed his power (Ill. Rev. Stat. 1975, ch. 10, par. 112(a)(3)) and is confined to an interpretation and application of the contract; he does not sit to dispense his own brand of justice. An arbitrator may, of course, look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the contract. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. Ill. Rev. Stat. 1975, ch. 10, par. 112(a)(3); *United Steelworkers of America v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1358, *Belardinelli v. Werner Continental, Inc.* (1974), 128 N.J. Super. 1, 318 A.2d 777.

■■ By the terms of the contract, appellant had the right pursuant to the contract to terminate construction and did so terminate. Appellees never contested that appellant had the right to terminate or improperly terminated the contract. The transcript of the arbitration hearing establishes that arbitrator Corrubia did not consider this right of

termination in his award. Toward the end of the arbitration hearing, Corrubia stated: "It is true that and you've [appellant] established that they do have deficiency in the construction. A lot of the stuff you're [appellant] talking about though, could have been corrected by them if they'd [appellees] have finished the house. You [appellant] can't deny that * * * what I'm saying is that it was possible and plausible, wouldn't you say, Jack [Bland] that they would have corrected some of the deficiencies like around the vent and things like that where they cut framing that they would have done some of the corrective work themselves." At another point in the hearing, Corrubia stated: "They [appellees] already admitted that they were going to pull them [shower and bathtub plumbing] and insulate behind them, so I think that [the incorrectly installed bathtub and shower] is irrelevant." Finally, Corrubia stated that a premium was paid on finishing the job on a cost basis after terminating the contracts, instead of allowing appellees to correct their mistakes. Therefore, we conclude that the arbitrators exceeded their power and did not arbitrate on the basis of the contract. Said failure could have been due to the lack of arbitration experience on the part of both arbitrators. We also note that the record of the arbitration hearing establishes that the breach of contract was entirely due to appellees' failure to follow the specifications of the contract. Appellant was not at fault, yet, the arbitrators' award rewards the appellees' breach of contract. In any event, having found that the arbitrators exceeded their power, we vacate the arbitrators' award and remand the cause to the trial court in order to implement rearbitration by a new panel of arbitrators pursuant to section 12(c) of the Uniform Arbitration Act (Ill. Rev. Stat. 1975, ch. 10, par. 112(c)).

For the foregoing reasons, the order of the Circuit Court of Madison County confirming the arbitration award is vacated and this cause is hereby remanded to the Circuit Court in order to implement rearbitration before a new panel of arbitrators.

Reversed and remanded with directions.

G. J. MORAN, J., concurs.

Mr. JUSTICE JONES, dissenting:

The majority confuse the *right* to terminate under the terms of the contract with the *propriety* of termination. It must follow of course, be presumed, that the arbitrators understood that the owner had the right under the contract to terminate the work for if that had not been done they would not have been called upon to arbitrate. The majority, apparently being dissatisfied with the factual resolution of the case by the arbitrators, have held that the arbitrators have "exceeded their powers"

and did not arbitrate on the basis of the contract because they did not accord the owner the right to terminate the work. This position cannot be supported by the facts presented by this case and I accordingly respectfully dissent.

The propriety of termination of the work under the contract was the central concern of the arbitrators and was well within the powers assigned to them by the agreement to arbitrate and the statute on arbitration. The subject contract was entered into on February 25, 1975, with construction to begin immediately. The plans and specifications for the house were unusually detailed, the anticipated result being a unique custom-built structure. Trouble between the contractor and the architect-owner began almost immediately, beginning with disputes over methods and materials used in pouring foundation concrete. The architect-owner spent increasing amounts of time on the job site as construction progressed, and each party sent out a blizzard of letters to the other as the June 15 date of expected completion drew near. The owner-architect alleged literally dozens of major and minor failures to comply with specifications and plans as well as generally incompetent construction practices. In addition, it became clear that the June 15 completion date would not be met. The contractor alleged lack of cooperation where materials were expected from the owner-architect, intermeddling on the job site, and harassment every step of the way.

Complaints, accusations of theft, and demands went back and forth concerning basement waterproofing, framing, roof decking, backfilling, flashing, and many other problems, until the owner-architect rejected the roof flashing and refused to allow construction to continue until it was removed and replaced properly. Dissatisfied with the contractor's response, on June 10, the owner-architect ordered all workers off the job and declared the contract terminated. When he found workers continuing to shingle over the rejected flashing, he called the sheriff of Madison County and had the contractor and its employees ejected. He took over the work pursuant to the terms of the contract, engaged another contractor to repair many sections of the structure which he considered inadequately done, and completed the construction. The contractor had received almost no progress payments thus far, and on February 26, 1976, requested arbitration concerning its right to payment, under the terms of the contract which called for arbitration of all disputes not related to "artistic effect." The owner-architect counterclaimed under a contract clause entitling him to receive from the contractor any cost in excess of bid price necessary to complete the structure, after a rightful contract termination.

The arbitration was done under the auspices of the American Arbitration Association, under Construction Industry Arbitration Rules. A

list of prospective arbitrators was furnished to the parties; each struck equal numbers of undesired names until the three who would serve remained. On the date set for commencement of the hearings, only two of the arbitrators could be found and the parties and their attorneys present agreed to continue using two arbitrators. No official recording or transcript of the proceedings was made, but the owner-architect received permission to use his own tape recorder.

The arbitrators Angelo Corrubia and John W. Bland, after hearing testimony and viewing affidavits and exhibits for two days, entered an award on October 19, 1976, that the owner-architect should pay to the contractor the sum of $26,400.

The owner-architect sought review of this award in the circuit court of Madison County. A transcript of the tape recordings made at the arbitration hearing was admitted into evidence. On appeal of the arbitration findings the trial court found, *inter alia*: (1) that the arbitrators' lack of legal training and experience created an air of considerable informality at the hearings; (2) that no partiality on the part of the arbitrators was indicated by their comments, such comments being attributable to the informal atmosphere; (3) no specific findings of fact were made by the arbitrators, other than a bare monetary award; and (4) there was no basis upon which to find the award improper, unfounded, or against the manifest weight of the evidence. The award of the arbitrators was confirmed.

The owner-architect urges that the action of the arbitrators shows that the arbitrators deviated from unambiguous provisions in the contract, since the arbitrators must have found that the contractor breached the contract. Therefore, the owner-architect was justified in rejecting work and in terminating the contract. Therefore since the architect-owner ultimately spent $18,002 above bid price to complete the house, the arbitrators must have deviated from one or more of the above-mentioned unambiguous provisions in the contract in order to award in favor of the contractor.

This reasoning would be sound if the arbitrators had made more than a bare monetary award; but the arbitrators are not required to give more than the bare award. (*Cohen v. Meyers* (1969), 115 Ill. App. 2d 286, 253 N.E.2d 144.) Further, "The awarding of a gross sum of money in such a case will be *presumed* to be a complete adjustment of all matters of difference embraced in the submission." (Emphasis added.) (*Cohen*, 115 Ill. App. 2d 286, 294, 253 N.E.2d 144, 148.) However, I cannot find any individual point of contention in which it could not be argued that the arbitrators made a particular finding of fact in favor of the contractor. For each contention the owner-architect made at the hearing, either the contractor or one of the arbitrators (who were admitted construction

experts) was able to put forth some counterargument, excuse, justification or other reply.

This rendered each question no more than a question of fact which could have been decided in favor of either party. In many cases the arbitrators were faced with conflicting testimony, leaving a question of credibility of the parties. For example, the architect-owner claimed that certain holes in the foundation were in improper locations; the contractor claimed the owner had helped locate the holes. Concerning the availability of roof decking of the type specified, the owner-architect contended it was available while the contractor claimed it was not. When the owner-architect stated without rebuttal that the framing did not conform to specifications, arbitrator Corrubia stated that he did not feel that it was necessarily wrong if it were done as stated; Corrubia seemed to imply that he felt the difference was minor. In other places the arbitrators stated that they thought one defect or another would have been cured before the contractor completed the job. There was not even a clear statement as to whether the arbitrators found the termination of the contract to have been justified and proper. Since the arbitrators gave only a money award without findings of fact, no specific deviation from an unambiguous provision of the contract can be found in the award itself. It may have been possible to show from the transcript of the arbitration hearings that the arbitrators disregarded unambiguous portions of the contract; however, the statements contained therein are not conclusive, and arguably may not show the state of mind of the arbitrators when the award was later made. Such an offer of proof should have been made in the trial court. It apparently was made, and upon this question of fact the trial court has found adversely to the owner-architect. The court cannot be said to have found contrarily to the manifest weight of the evidence on this point.

The question is whether there is enough in the record to support the conclusion reached in arbitration. The conclusion reached is a plausible one, though not the only one possible. It was the arbitrators rather than the courts who heard the testimony, saw the exhibits, and were able to weigh it firsthand. These arbitrators were possessed of experience and expertise in the construction industry which also entitled their findings to some deference. We cannot vacate an award which the arbitrators could justifiably have reached. It must also be remembered that the parties themselves selected the arbitration process rather than the courts as a mechanism to resolve any disputes; they should be left to it as much as possible, and appeal from that process is correspondingly restricted. The losing party in this arbitration is the very party which proposed the arbitration clause, with any award rendered to be "final."

I would affirm the judgment of the trial court.